IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF GEORGIA
STATESBORO DIVISION

IN RE WASEEM DAKER

```
                    *
                    *
                    *
                    *
                    *        MC 625-001
                    *
                    *
                    *
                    *
                    *
```

## O R D E R

On February 19, 2025, after giving him an opportunity to show cause, the Court restricted Waseem Daker's filings by directing the Clerk to open a miscellaneous file in which to place anything filed by Daker.  (See Doc. 1.)  The Court also ordered Daker to show cause as to why a contempt sanction, to be paid from a contempt bond in the amount of $1,500, should not be assessed against him.  (Id. at 16-18.)[1]  His response to the Show Cause Order is before the Court for review.  (Doc. 2.)

In its Show Cause Order, the Court observed that Daker has not been dissuaded from engaging in abusive behavior by the filing injunction entered against him on January 26, 2023, and that he was therefore in violation of the filing injunction.  (Doc. 1, at 16-17.)  The Court also described the various tactics used by Daker

---

[1] Petitioner's "Declaration" of payment of the contempt bond was cross-docketed.  See 6:22-cv-037, Doc. 99 (S.D. Ga. Oct. 10, 2024); 6:20-cv-115, Doc. 116 (S.D. Ga. Oct. 10, 2024); 6:22-cv-36, Doc. 44 (S.D. Ga. Oct. 10, 2024).

to abuse judicial processes and create courthouse disfunction.
(Id. at 14.)  It then proposed that, based on those findings,
sanctions were warranted, to be paid from the contempt bond he
posted, and thus the Court ordered Daker to show cause why
sanctions should not be imposed.  (Id. at 17-18.)  Daker responded,
asserting three arguments against sanctions: (1) the Court already
"pre-judged" that sanctions are warranted before allowing Daker an
opportunity to be heard; (2) sanctions are not warranted because
Daker's abusive litigation history predates his payment of the
contempt bond on October 10, 2024; and (3) the sanction is a bad
faith attempt to deprive Daker of his assets without due process.
(See generally Doc. 2.)  Daker pairs his first assertion with
another suggestion that the undersigned recuse and argues that any
sanction would violate his due process rights under the Fifth
Amendment.  (Id. at 2.)  Daker also suggests that because the Court
has not found him in contempt for filing more frivolous cases, it
cannot impose a fine to be paid from the contempt bond.  (Id. at
10.)  He claims the additional sanction is "overkill."  (Id.)


                          **DISCUSSION**

    The Fifth Amendment guarantees that no person shall be
deprived of life, liberty, or property without due process of law.
U.S. Const., Amend. V.  A court must comport with the mandates of
due process when issuing sanctions for abusive litigation

                               2

practices. Chambers v. NASCO, 501 U.S. 32, 50 (1991); Roadway

Exp., Inc. v. Piper, 447 U.S. 752, 767 (1980). In this unique

situation, what process is due is a more difficult question, but

"[t]he very nature of due process negates any concept of inflexible

procedures universally applicable to every imaginable situation."

Cafeteria & Rest. Workers Union v. McElroy, 367 U.S. 886, 895

(1961). While courts have framed the due process protections in

the sanctions context somewhat differently depending on the source

of the court's sanctioning authority, the requirements are similar

in substance. In general, regardless of whether the Court invokes

Federal Rule of Civil Procedure 11, 28 U.S.C. § 1927,[2] or its

inherent authority to impose sanctions or punish contempt of their

authority, it must provide a party notice of the possibility of

sanctions, the reasons why the court is contemplating sanctions,

and an opportunity to respond. Amlong & Amlong, P.A. v. Denny's,

Inc., 500 F.3d 1230, 1242 (11th Cir. 2007) ("Plainly, an attorney

threatened with sanctions under § 1927 is entitled to a hearing.")

(citing Reynolds v. Roberts, 207 F.3d 1288, 1302 (11th Cir. 2000));

Thomas v. Tenneco Packaging Co., Inc., 293 F.3d 1306, 1320-21 (11th

Cir. 2002) (one facing sanctions pursuant to a court's inherent

---

[2] 28 U.S.C. § 1927 states, "[a]ny attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct."

authority "must be provided with notice and 'an opportunity to respond, orally or in writing, to the invocation of such sanctions and to justify his actions.'") (quoting In re Mroz, 65 F.3d 1567, 1575-76 (11th Cir. 1995)); Donaldson v. Clark, 819 F.2d 1551, 1559-60 (11th Cir. 1987) (en banc) ("Due process requires that the attorney (or party where applicable) has fair notice of the possible imposition of Rule 11 sanctions and of the reasons for their imposition," as well as "an opportunity to respond, orally or in writing as may be appropriate . . . ."); see also In re Terry, 128 U.S. 289 (1888).

Daker argues that the Court has not yet found him "in contempt" and "imposed a fine to be paid from the contempt bond," and therefore the injunction cannot be enforced. (Doc. 2, at 10.) He is correct that, in some cases, an injunction can be enforced, if necessary, through a contempt proceeding. See, e.g., Doe v. Bush, 261 F.3d 1037, 1064 (11th Cir. 2001); Howard Johnson Co. v. Khimani, 892 F.2d 1512, 1516 (11th Cir. 1990). Historically, there are at least four types of contempt at common law: civil versus criminal contempt, and direct versus indirect contempt. The nature of the proceeding may be determined from the purpose of the penalty. In re Stewart, 571 F.2d 958, 963 (5th Cir. 1978). "Civil contempt is remedial; the penalty serves to enforce compliance with a court order or to compensate an injured party. Criminal contempt is punitive; the penalty serves to vindicate the authority

of the court and does not terminate upon compliance with a court order." Id. Direct contempts are those which occur in the presence of the court and are subject to summary adjudication "to maintain order in the courtroom and the integrity of the trial process in the face of an actual obstruction of justice" because "the contempt's occurrence before the Court reduces the need for extensive factfinding and the likelihood of an erroneous deprivation." Int'l Union, United Mine Workers of Am. v. Bagwell, 512 U.S. 821, 832-33 (1994) (internal quotations and citation omitted). Summary adjudication of indirect ones, those occurring out of court, is improper. Green v. United States, 356 U.S. 165, 217 n.33 (1958) (Black, J., dissenting) (noting that "contempts committed beyond the court's presence where the judge has no personal knowledge of the material facts are especially suited for trial by jury").

"Under traditional principles of equity practice, courts have long imposed civil contempt sanctions to 'coerce the defendant into compliance' with an injunction or 'compensate the complainant for losses' stemming from the defendant's noncompliance with an injunction." Taggart v. Lorenzen, 587 U.S. 554, 560 (2019) (quoting United States v. Mine Workers, 330 U.S. 258, 303-04 (1947)) (applying traditional civil contempt principles to the bankruptcy discharge context). Punishment for civil contempt is usually considered to be remedial-for the benefit of the

5

complainant—or coercive—designed to compel *future* compliance with a court order. Bagwell, 512 U.S. at 827; In Re Timmons, 607 F.2d 120, 124 (5th Cir. 1979). It is avoidable through obedience. Bagwell, 512 U.S. at 827. For that reason, coercive civil contempt punishment is conditional and must be lifted if the contemnor obeys the order of the court. Shillitani v. United States, 384 U.S. 364, 370-72 (1966). The term of punishment for coercive civil contempt cannot extend beyond the trial proceedings since at the termination of the trial the contemnor's actions can no longer be purged. Id. at 371. "In contrast, for a compensatory civil contempt sanction, 'in order to purge themselves of contempt,' defendants must 'pay the damages caused by their violations of the decree.'" F.T.C. v. Leshin, 719 F.3d 1227, 1234 (11th Cir. 2013) (citing Clark v. Boynton, 362 F.2d 992, 998 (5th Cir. 1966)). "In other words, the contempt ends when the contemnor pays the full amount." Id.

On the other hand, criminal contempt serves to vindicate the court's authority and to punish those who disregard that authority. Bagwell, 512 U.S. at 827-28. The sentence is punitive, and it requires full-blown criminal procedures. Id. at 826-27. Contrarily, contempts which are civil in nature may be imposed in "an ordinary civil proceeding upon notice and an opportunity to be heard." Bagwell, 512 U.S. at 827. Neither a jury trial nor proof

beyond a reasonable doubt is required for civil contempt sanctions to be enforced.  Id.

Though the Eleventh Circuit has affirmed the imposition of sanctions based on the violation of injunctive orders as properly imposed "civil contempt" sanctions, see Riccard v. Prudential Ins. Co., 307 F.3d 1277 (11th Cir. 2002); Doe, 261 F.3d 1037; Howard Johnson Co., 892 F.2d 1512, Supreme Court precedent holds that such "backward-looking" sanctions are punitive and thus not civil in nature.  See generally Bagwell, 512 U.S. 821 (holding contempt was criminal in nature where it was punitive, even where trial court prospectively announced sanctions to be imposed for violation of injunction and then attempted to do so upon the violation).  The Bagwell holding, "however, leaves unaltered the longstanding authority of judges to adjudicate direct contempts summarily, and to enter broad compensatory awards for all contempts through civil proceedings."  Id. at 838.

Under the Eleventh Circuit's paradigm, a "finding of civil contempt—willful disregard of the authority of the court—must be supported by clear and convincing evidence."  Riccard, 307 F.3d at 1296 (citing McGregor v. Chierico, 206 F.3d 1378, 1383 (11th Cir. 2000)).  The clear and convincing evidence must establish that: (1) the allegedly violated order was valid and lawful; (2) the order was clear and unambiguous; and (3) the alleged violator had the ability to comply with the order.  Id.  In determining whether

a party is in contempt of a court order, the order is subject to reasonable interpretation, though it may not be expanded beyond the meaning of its terms absent notice and an opportunity to be heard. United States v. Greyhound Corp., 508 F.2d 529, 537 (7th Cir. 1974); see also Bush, 261 F.3d at 1063-64; Reynolds v. Roberts, 207 F.3d 1288, 1300-01 (11th Cir. 2000).

There are two possible types of contempt the Court may appropriately consider in Daker's case: direct contempt and remedial civil contempt. Though Daker's actions have occurred directly or "in court" through his pleadings, and therefore may fall into the category of "direct" contempt, the proceedings have not been summary in nature, as the Court sought to afford him as much due process as possible. See United States v. Baldwin, 770 F.2d 1550, 1553 (11th Cir. 1985) (quoting Matter of Heathcock, 696 F.2d 1362 (11th Cir.1983) (Direct contempt is committed in the "actual presence of the court," and provides for summary disposition.); see also Bagwell, 512 U.S. at 832 (summary adjudication becomes less justifiable once a court leaves the realm of immediately sanctioned, petty direct contempt).

Additionally, though the Court seeks remedial or compensatory relief from Daker for his rampant waste of judicial resources, it is not clear that the Court may impose such a consequence and call it "civil," since, in this case, the Court issued a prospective fine, to be forfeited upon disobedience, which was then untimely

paid by Daker despite his disobedience, and then, as a consequence
of his repeated violation, the Court threatened retaining the
funds. Bagwell, 512 U.S. at 836 ("[W]e are not persuaded that
dispositive significance should be accorded to the fact that the
trial court prospectively announced the sanctions it would impose
. . . . The fact that the trial court announced the fines before
the contumacy, rather than after the fact, does not in itself
justify respondents' conclusion that the fines are civil.").
Permanent forfeiture of the funds for violative behavior places
this case in the realm more like the one discussed by the Supreme
Court in Bagwell, which was held to be punitive and thus
"criminal"—or at the very least, in unfamiliar territory. Id. at
828 (Contempt is "punitive and criminal if it is imposed
retrospectively for a 'completed act of disobedience.'")[3]
Furthermore, given the nature of the cases filed by Daker, there
is no opposing party, and therefore no prevailing party for whom
to award sanctions as a remedial solution or to compensate for
damages suffered because of Daker's disobedience to the Court's
orders. See Hicks ex rel. Feiock v. Feiock, 485 U.S. 624, 632
(1988) ("If the relief provided is a fine, it is remedial [and

---

[3] Had Daker paid the bond upon filing a new case, then proceeded to disobey the
Court's rules, it would be easier to place the contempt in the category of a
civil contempt because he would have had the opportunity to purge the fee
through compliance. See Bagwell, 512 U.S. at 829 (a "flat unconditional fine"
totaling even as little as $50 announced after a finding of contempt is criminal
if the contemnor has no subsequent opportunity to reduce or avoid the fine
through compliance.") (citations omitted).

thus civil in nature] when it is paid to the complainant, and punitive when it is paid to the court . . . .").

Nevertheless, for the filing injunction to have any teeth, it must be enforced in the manner it contemplates, *i.e.*, the forfeiture of the funds upon its violation. Though the Court's authority to impose sanctions against Daker's bad behavior is clear, and though the Eleventh Circuit often threatens prospective fines which are then assessed when parties violate injunctive orders, a civil contempt finding would lie on shaky ground here, considering its punitive nature under Bagwell. Additionally, because the Court has endeavored to afford Daker due process, a direct contempt finding is similarly uncertain.

However, Courts do have the inherent power to police those appearing before them. Chambers, 501 U.S. at 46. A court's inherent power is "governed not by rule or statute but by the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases." Id. at 43 (citing Link v. Wabash R.R., 370 U.S. 626, 630–31 (1962)). This power "must be exercised with restraint and discretion" and used "to fashion an appropriate sanction for conduct which abuses the judicial process." Id. at 44–45. A court may exercise this power "to sanction the willful disobedience of a court order, and to sanction a party who has acted in bad faith, vexatiously, wantonly, or for oppressive reasons." Marx v. Gen.

Revenue Corp., 568 U.S. 371, 382 (2013) (citing Chambers, 501 U.S. at 45-46). At least in part, this power exists to vindicate judicial authority without resorting to a contempt of court sanction. See Chambers, 501 U.S. at 46. The key to unlocking a court's inherent power is a finding of bad faith. See Sciarretta v. Lincoln Nat. Life Ins. Co., 778 F.3d 1205, 1212 (11th Cir. 2015).

Furthermore, the Eleventh Circuit recognizes the courts' inherent power to impose sanctions against a *pro se* party for bad-faith, vexatious, wanton, or oppressive conduct. Wachovia Bank v. Tien, 406 F. App'x 378, 382-83 (11th Cir. 2010) (affirming sanctions against *pro se* litigant and citing Byrne v. Nezhat, 261 F.3d 1075, 1106 (11th Cir. 2001) (abrogated on other grounds as recognized by Jackson v. Bank of Am., N.A., 898 F.3d 1348, 1357 n.10 (11th Cir. 2018), and Rothenberg v. Sec. Mgmt Co., 736 F.2d 1470, 1471 (11th Cir. 1984)).[4] A finding of bad faith is warranted where the individual knowingly or recklessly raises a frivolous argument, argues a claim for the purpose of harassing an opponent, delays or disrupts the litigation, or hampers enforcement of a

---

[4] See also Thomas, 293 F.3d at 1320("[B]efore a court can impose sanctions against a lawyer under its inherent power, it must find that the lawyer's conduct 'constituted or was tantamount to bad faith.'" (quoting Durrett v. Jenkins Brickyard, Inc., 678 F.2d 911, 918 (11th Cir.1982))); In re Mroz, 65 F.3d at 1575; see also Roadway Express, Inc. v. Piper, 447 U.S. 752, 767 (1980) (noting that "[a] specific finding as to whether counsel's conduct in this case constituted or was tantamount to bad faith . . . would have to precede any sanction under the court's inherent powers").

court order.  Byrne, 261 F.3d at 1121 (citing Barnes v. Dalton, 158 F.3d 1212, 1214 (11th Cir. 1998)).

Accordingly, though the Court's authority to find Daker in contempt under the present circumstances is unclear, the Court may impose sanctions against Daker if it finds he has acted in bad faith.  Of course, due process requires he receive notice of the possibility of sanctions and an opportunity to respond.  To that end, Daker received ample warning that sanctions would be imposed for violative behavior, the authorities under which sanctions might be imposed, and the reasons why, beginning when the first injunction was entered against him in this Court on January 26, 2023.  In that Order, he was warned:

> If any of Daker's filings are deemed frivolous or duplicative, the presiding judge may, after notice to Daker and an opportunity to respond, impose a contempt sanction against Daker to be paid from the contempt bond. In the event of such a sanction, Daker will not be allowed to file any further complaints or petitions unless and until the contempt bond is replenished to the amount of $1,500.

Daker v. Ward, No. 6:22-cv-36, Doc. 24, at 6 (S.D. Ga. Jan. 26, 2023).  Then, the Court alerted Daker as to his violation of the order by, *inter alia*, filing frivolous post-judgment motions in Daker v. Ward, 6:22-cv-037, Doc. 100, at 15 (S.D. Ga. Nov. 22, 2024).  Thereafter, the Court issued its Show Cause Order which explained the necessity of the sanction.  (Doc. 1.)  The Court reviewed how it had imposed an injunction against Daker which

12

required him to pay funds upon filing a new case, refrain from vexatiousness and filing frivolous pleadings, and generally obey court orders. (See id.); see also 6:22-cv-36, Doc. 24, at 6 (S.D. Ga. Jan. 26, 2023). If he had been compliant, the funds would have been returned. However, as explained in the Court's Show Cause Order, Daker belatedly paid the contempt bond as to any recently pending case, and prematurely paid it as to any new case he hoped to file, which created procedural awkwardness. In other words, Daker paid the bond despite not filing a new case and after the deadline to keep his other case alive. 6:22-cv-37, Doc. 67. And then, he did not comply with the injunction's requirements that he not engage in frivolity or vexatiousness. See 6:22-cv-37, Doc. 100. Yet, though his untimely payment resulted in the very procedural awkwardness the Court addressed above, he has forfeited the funds as required by the terms of the injunction order. Id.

Daker offers no support for his arguments that "[t]he Court may not impose a monetary sanction now just because it finds that Mr. Daker's litigation in the past was abusive." (Doc. 2, at 4.) Though he claims that, because he has not filed any frivolous cases or motions since he paid the contempt bond on October 10, 2024, the sanction is unnecessary, he does not acknowledge the filings which the Court has already determined were vexatious or frivolous, (Doc. 1). See 6:22-cv-036, Doc. 43 (S.D. Ga. Oct. 10, 2024). He

also complains that the Court seeks to sanction him using the funds simply because, now that that they are paid, it can.

Daker's presumption that the Court may not impose a monetary sanction for his past behavior is simply false. Chambers, 501 U.S. 32. Additionally, the Court need not limit its consideration of Daker's frivolous filings to those filed after he posted the contempt bond, but rather considers Daker's behavior at least since the Court's Order warning him that sanctions could be taken from his contempt bond on January 26, 2023 if he filed frivolous or duplicative pleadings. See 6:22-cv-36, Doc. 24, at 6 (S.D. Ga. Jan. 26, 2023). Indeed, it was not his payment of the bond that triggered the initial notice of the potential consequences of enforcing the injunction but rather the Court's injunction Order warning him that he would be sanctioned from the bond funds if his "filings are deemed frivolous or duplicative." See id. Daker's belated[5] filing of the contempt bond does not restrict the Court from considering only his behavior after he posted the funds. As described by the Court's Show Cause Order, Daker did not heed that warning and instead continued to file frivolous post judgment

---

[5] Daker also disputes the Court's finding that the payment was untimely, arguing he deposited them in a good faith attempt to comply with the injunction. Daker was ordered to pay the contempt bond by February 9, 2023. See 6:22-cv-036, Doc. 24 (S.D. Ga. Jan. 26, 2023). He deposited the funds on October 10, 2024. Id. Doc. 44 (S.D. Ga. Oct. 10, 2024). Thus, the payment was untimely. To the extent it was not clear before, in the future, Daker must pay the $1500 contempt bond before filing any new case in this District. Therefore, as was also true in the past, unless and until Daker files any new case, payment of the bond in an effort to preserve some future ability to file cases is premature.

motions seeking to rehash arguments he had already lost. See 6:22-cv-36, Docs. 33, 37, 38, 39; see also 6:22-cv-037, Docs. 62, 63, 71, 75, 86, 90; see also 6:22-cv-37, Doc. 100 (explaining that Daker violated the injunction by filing frivolous post-judgment motions in that case and finding that sanctions were warranted).

Daker has given no indication that he took the Court's warning regarding contumacious filings seriously even after he deposited the funds. Rather than accept responsibility for his vexatiousness, in his response to the Court's August 26, 2024 Order to Show Cause Why Filing Restrictions Should not be Imposed, 6:20-cv-115, Doc. 114, Daker accused the undersigned of making a "personal attempt to retaliate against Mr. Daker for filing his Motion to Recuse." See 6:20-cv-115, Doc. 123 (S.D. Ga. Nov. 20, 2024). In his current response, he again baselessly suggests the undersigned should recuse. (Doc. 2, at 2.) As outlined in this Court's most recent Show Cause Order, Daker's repeated requests for the undersigned to recuse constitute frivolous filings and are in violation of the injunction. (See Doc. 1.)

Also as described in that Order, Daker disingenuously claimed that his litigation in this Court has not been frivolous because, as he puts it, he has had few frivolity dismissals, and he claimed none of his cases in this district have been dismissed as "duplicative, frivolous, and abusive." 6:20-cv-115, Doc. 123, at 10. In virtually the next breath, he admitted that one of his

15

cases had, in fact, been dismissed as duplicative. (Id.) Daker has made clear he intends to continue to mislead the Court, and when the Court tries to hold him accountable, create confusion to shield himself from blame. Indeed, Daker began taking seriously the Court's authority to prohibit his abusiveness only upon the Court's well-founded threat to impose monetary penalties for his persistent disregard of its orders. Therefore, it is apparent forfeiting the funds is necessary to deter him from continuing to behave as he has consistently done over the past ten-plus years. See, e.g., Daker v. Jackson, 942 F.3d 1252, 1255 (11th Cir. 2019) (noting in 2019 that Daker had by then filed over a thousand pro se filings in over a hundred actions and appeals in at least nine different federal courts.)

Daker's next unsupported argument claims "[t]he only ostensible basis cited for sanctions is Mr. Daker's 3/7/24 Supplemental Fed. R. Civ. P. 59(e) Motion for Reconsideration (Doc. 90) in No. 6:22-CV-00037," a motion which the Court construed as seeking Rule 60 relief given its untimeliness. (Doc. 2, at 4.) He claims the Motion was not duplicative because he did not yet know the Court had already ruled on his prior motion seeking the same relief, 6:22-cv-037, Doc. 75, and the second filing was merely meant to provide citation which he was unable to provide when he timely filed his first Motion. (Id. at 5.) He claims he filed the latter Motion to supplement the initial request, not because

16

he "does not take 'no' for an answer." (Id.) In other words, Daker admits to filing a second motion seeking alteration of the final order before he even obtained resolution on the first, which is equally vexatious behavior. In any event, any presumption of good faith typically extended to Daker's unlikely explanations for objectively bad behavior was used up long ago; the Court can no longer take Daker at his word. Indeed, his paltry "good faith" argument is inconsistent with his next one, wherein he asserts, since the Federal Rules authorize him to move for relief from the judgment, he may do so freely. He claims the fact that the Court has the capacity to exercise its discretion to make a ruling "does not make such a Motion frivolous," as though he still does not respect the Court's own repeated admonition that filing multiple post-judgment motions as a matter of course is vexatious. (Id. at 5-6.) He argues, "this Court could have exercised its discretion to either grant or deny such a Motion." (Id.)

In fact, the Federal Rules of Civil Procedure do not authorize the filing of motions to reconsider, a common filing of Daker's. Such motions are simply construed as Rule 59(e) motions to alter/amend or Rule 60(b) motions for relief from judgment/order. See FED. R. CIV. P. 59(e) ("A motion to alter or amend a judgment must be filed no later than 28 days after the entry of the judgment."); FED. R. CIV. P. 60(b) (allowing relief from a judgment or order "[o]n motion and just terms," and setting out 6 limited

17

reasons for relief.) Both rules contemplate relief will be requested only in extraordinary circumstances. And, as Daker well knows, in the interests of finality and conservation of scarce judicial resources, "reconsideration of a judgment after its entry is an extraordinary remedy which should be used sparingly." 11 Charles Alan Wright, Arthur R. Miller, & Mary Kay Kane, *Federal Practice and Procedure* § 2810.1 (3d ed. April 2025 Update). "A Rule 59(e) motion cannot be used to relitigate old matters, raise argument or present evidence that could have been raised prior to the entry of judgment." Michael Linet, Inc. v. Village of Wellington, 408 F.3d 757, 763 (11th Cir. 2005) (alterations omitted).

Thus, while there are some limited instances when asking a Court to review its decision might be appropriate, the *routine* practice of filing motions for reconsideration as a matter of course when there is no exceptional circumstance warranting them is considered vexatious and thus intolerable. Daker v. Adams, No. 6:22-cv-71, 2023 WL 7030146, at *1 (S.D. Ga. Oct. 25, 2023). Although such limitation is not codified in this District's Local Rules as it is in other districts, Daker has been alerted to the nuisance of filing these motions by this Court and other Courts for years. See id.; see also e.g., Daker v. Dozier, No. 5:17-CV-25, 2017 WL 4797522, at *2 (M.D. Ga. Oct. 24, 2017) ("Daker has abused the judicial process through the repeated filings of these

motions, blatantly disregarding this Court's Local Rule providing that "[m]otions for reconsideration shall not be filed as a matter of routine practice."); Daker v. Robinson, No. 1:12-CV-118, 2014 WL 202712, at *2 (N.D. Ga. Jan. 16, 2014)("Once again, Daker is reminded that this Court's Local Rules prohibit the filing of motions for reconsideration as a matter of routine practice and prohibit altogether the filing of "motions to reconsider the court's denial of a prior motion for reconsideration.") (citing LR 7.2E, N.D. Ga)).

To be clear, the Court herein does not seek to punish Daker for his behavior in other districts, but notes that Daker's argument that he has merely used the devices available under the Federal Rules to seek review of his claims is not innocent. He cannot feign ignorance of the reality; filing repeated baseless motions asking the Court to reconsider or vacate its properly considered orders at this point is contumacious because courts have explained these standards to Daker, and yet he does not heed them. Instead, he still believes he may pursue motions on grounds which he knows have no basis in the law, the very definition of a frivolous motion. Fries v. Helsper, 146 F.3d 452, 458 (7th Cir. 1998) (A frivolous argument or claim is one that is "baseless and made without a reasonable and competent inquiry."); see also Rodriguez v. United States, 542 F.3d 704, 710 (9th Cir. 2008) (A "frivolous [argument] is one that is groundless" and that an

argument is groundless if it is "foreclosed by binding precedent or . . . obviously wrong") (citations omitted).    As has been explained to him, "[a] movant must set forth facts or law of a strongly convincing nature to induce the court to reverse its prior decision," not mere disagreement with holdings, as he has repeatedly done. Daker v. Adams, No. 6:22-cv-71, 2023 WL 7030146, at *1 (S.D. Ga. Oct. 25, 2023) (quoting Smith ex rel. Smith v. Augusta-Richmond County, No. CV 110-126, 2012 WL 1355575, at *1 (S.D. Ga. Apr. 18, 2012)).

Daker has also been told many times that, "[t]he only grounds for granting a Rule 59 motion are newly-discovered evidence or manifest errors of law or fact." See, e.g., Georgia v. Daker, 853 F. App'x 514, 519 (11th Cir. 2021)(quoting In re Kellogg, 197 F.3d 116, 119 (11th Cir. 1999); Daker v. Adams, 2023 WL 7030146, at *1 (S.D. Ga. Oct. 25, 2023), appeal dismissed sub nom. Daker v. Hays SP Warden, 2024 WL 1839396 (11th Cir. Apr. 16, 2024); In re Daker, 2017 WL 6626361, at *2 (N.D. Ga. June 23, 2017), report and recommendation adopted sub nom. Daker v. Robinson, 2017 WL 6619230 (N.D. Ga. Sept. 29, 2017).    Though he purports to constantly see manifest errors in the Court's rulings, Daker does not actually point to factors under these rules, but he files the motions anyway because he thinks the Court can simply decline to grant them.    That is a waste of judicial resources and is sanctionable behavior because it constitutes objective bad faith.    Indeed, Daker's

argument that the Court could simply deny his unmerited requests exemplifies his bad faith. Significant time and energy are required to draft opinions and orders, and when the rules are abused to the extent Daker abuses them, and when there is no reasonable basis to request reconsideration except his mere disagreement with the Court's conclusions, there is significant drain even when the request is denied.

Even worse, when Daker asks the Court to reconsider an order which he is already appealing based on a fruitless argument which is not contemplated by the rules, he creates unreasonable inefficiencies. See, e.g., 6:20-cv-115, Doc. 112. It is also frivolous conduct which has delayed and protracted litigation. In re Sunshine Jr. Stores, Inc., 456 F.3d 1291, 1305 (11th Cir. 2006) (recognizing that where an award of fees is directly tied to delays and protracted litigation caused by bad faith conduct, the award is well within a court's inherent powers). The constant barrage of such motions "threatens [the] court's immediate ability to conduct its proceedings." Bagwell, 512 U.S. at 832 (The Court's power to impose sanctions "is at its pinnacle . . . where contumacious conduct threatens a court's immediate ability to conduct its proceedings.").

In the specific examples used by Daker as evidence of his motions being merited, he cites to two cases where he filed successful post-judgment motions, signaled by the fact that the

21

Court exercised its discretion to "indicate its belief that the arguments raised [were] meritorious," such that he was authorized to move in the Eleventh Circuit for remand. (Doc. 2, at 10.) However, the cases cited, which Daker believes justify his endless pursuit of unsuccessful motions to vacate or reconsider, are aged. Those cases were filed in 2016 and 2014, and the referenced orders were from 2017. (See Doc. 2, at 10 (citing Daker v. United States, 4:16-cv-158, Doc. 26 (S.D. Ga. Jan. 4, 2017) and Daker v. Head, 6:14-cv-047, Doc. 61 (S.D. Ga. April 3, 2017)).) It is rare that Daker files a convincing motion for reconsideration in this District, and he has filed countless futile ones since 2017. These outdated examples of persuasive motions do not sustain Daker's good faith in perpetuity, nor do they permit his continued vexatiousness, especially when his behavior since then merely indicates a ruthless pursuit of trivial victories or attempts to provoke courthouse sparring, instead of a genuine desire to vindicate actual constitutional harms. Even a broken clock is right twice a day.

In short, Daker has not shown cause why sanctions should not be ordered in his case. He has yet again shown his disrespect for the Court's time and resources. He has relied upon his own self-serving assertions about the Court's authority to examine his filing history, and he has attempted to mislead the Court instead of providing any worthy explanation or excuse for his actions.

22

Indeed, he attempts to appear as if he has done nothing wrong, despite being warned and despite being given multiple notices. He has been given all process due to him, and precedent allows the Court to both protect itself from future abuse, see Procup v. Strickland, 792 F.2d 1069, 1073 (11th Cir. 1986), and sanction those who have abused it, see Chambers, 501 U.S. 32, because he has been acting in bad faith.

Next, in issuing its Show Cause Order, the Court did not "pre-judge" Daker's behavior. Instead, the Court made specific findings as to Daker's conduct that warranted sanctions, Wachovia Bank v. Tien, 406 F. App'x 378, 383 (11th Cir. 2010), and explained its reasons for holding that sanctions were necessary unless Daker could show cause why they were not. (See generally, Doc. 1.) Such is the nature of any show cause order. Moreover, the sanction is reasonable in amount, as it compensates the Court for the heavy burden Daker has placed upon it by filing frivolous and duplicative motions, filing duplicative cases, and refusing to accept the Court's authority, which has interfered with judicial processes, for many years. Besides, Daker has proven himself solvent by paying the filing fees upon filing many cases, as well as paying the contempt bond in each district in Georgia regardless of whether he intended to file a case there in the immediate future. Martin v. Automobili Lamborghini Exclusive, Inc., 307 F.3d 1332, 1337 (11th Cir. 2002) ("[W]hen exercising its discretion to sanction

under its inherent power, a court must take into consideration the financial circumstances of the party being sanctioned.")

Having given him due process, it is well within the Court's inherent authority to impose sanctions as punishment for Daker's behavior by sanctioning him based on his bad faith actions, as described herein and in the Court's Show Cause Order. See Purchasing Power, LLC v. Bluestem Brands, Inc., 851 F.3d 1218, 1223 (11th Cir. 2017); Citronelle-Mobile Gathering, Inc. v. Watkins, 943 F.2d 1297, 1301 (11th Cir.1991) (district courts "have inherent power to enforce compliance with their lawful orders through civil contempt."). Furthermore, there was no requirement the Court already have found him in contempt before issuing its show cause order given his behavior is readily apparent upon reviewing the docket, and a civil contempt finding would likely be inappropriate anyway. Though it is rare to subject pro se litigants to monetary sanctions, the Court has made specific findings regarding Daker's bad faith which he has not overcome in his Response to the Show Cause Order. Therefore, Daker is hereby **SANCTIONED** in the amount of $1500.00, to be paid from the contempt

bond he paid into the Court on October 10, 2024.  The Clerk is **DIRECTED** to retain the funds.

 **ORDER ENTERED** at Augusta, Georgia, this _4th_ day of June, 2025.

             _____
          HONORABLE J. RANDAL HALL
          UNITED STATES DISTRICT JUDGE
          SOUTHERN DISTRICT OF GEORGIA