IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF GEORGIA
STATESBORO DIVISION

WASEEM DAKER,                    *
                                 *
        Petitioner,              *
                                 *
        v.                       *            MC 625-001
                                 *
BRIAN ADAMS, Warden,             *
                                 *
        Respondent.              *
                                 *

O R D E R

On August 4, 2020, the Northern District of Georgia issued an
Order of Permanent Injunction against movant Waseem Daker.  See
Daker v. Deal, No. 1:18-CV-5243, doc. 57 (N.D. Ga. Aug. 4, 2020),
aff'd sub nom. Daker v. Governor of Georgia, 2022 WL 1102015 (11th
Cir. Apr. 13, 2022).  In that Order, Judge William Ray mandated
inter alia that Plaintiff include with "every lawsuit he files in
this or any other federal court" (1) a copy of the injunction and
(2) "a list of each and every lawsuit, habeas corpus petition, and
appeal that he has filed in any federal court, along with the final
disposition of each lawsuit, petition or appeal."  Id. at 19
(emphasis in original).  Daker appealed the order of injunction,
arguing that the district court lacks jurisdiction to order him to
report his litigation history to other courts.  However, the
Eleventh Circuit conclusively disagreed, holding that reporting
litigation history ensured enforcement of the injunction, which it

held "operate[s] continuously and perpetually upon' and is "binding upon [Daker] . . . throughout the United States." Daker, 2022 WL 1102015, at *2 (citing Leman v. Krentler-Arnold Hinge Last Co., 284 U.S. 448, 451 (1932)).

On January 26, 2023, this Court followed suit and permanently enjoined Petitioner from filing any new lawsuit or petition in this District without first posting a $1,500 contempt bond in addition to paying the filing fee. See 6:22-cv-36, doc. 24 (S.D. Ga. Jan. 26, 2023). Pursuant to the filing injunction, Daker was instructed to refrain from filing frivolous or duplicative pleadings or motions in this District, and he was warned that his failure to so refrain may result in the imposition of additional sanctions. Id. at 6. Like the Northern District, this Court's filing injunction also required Daker to include with every complaint or petition he files in this or any other federal court (1) a copy of the order mandating the injunction, and (2) a list of each and every lawsuit, habeas corpus petition, and appeal that he has filed in any federal court along with the final disposition of each. Id. at 8.

On March 23, 2023, the Court incorporated the injunction into other cases filed by Daker and directed him to pay a $1,500 contempt bond before his currently pending cases could proceed. See, e.g., Daker v. Adams, 6:22-cv-37, doc. 61 (S.D. Ga. Mar. 23, 2023). Daker was directed to pay the required contempt bond or

file objections to the application of the bond within fourteen days of that incorporation. Id. at 3. He did not timely pay that bond, and his cases which incorporated the injunction were dismissed. See id., doc. 67 (S.D. Ga. May 9, 2023). Daker then belatedly paid the contempt bond. See, e.g., 6:22-cv-036, doc. 44 (S.D. Ga. Oct. 10, 2024). Meanwhile, the Court dismissed cases Daker had filed in contravention of the Northern District's injunction against him as well. See Daker v. Adams, 6:22-cv-071, doc. 18 (S.D. Ga. July 13, 2023); Daker v. Dozier, 6:22-cv-072, doc. 8 (S.D. Ga. December 20, 2022). He thus has no open cases in this district.

Daker has sought review of the entry of this Court's injunction and other dismissals under Rule 59 and 60(b) so many times that he violated the filing injunction. Consequently, the Court further restricted his filings by directing the Clerk to place all of his pleadings in a miscellaneous file, and the contempt bond funds he belatedly paid were levied against him as a sanction for his vexatious and frivolous pursuit to have every decision of this Court reconsidered countless times. See docs. 1 & 3.[1] Despite the Court's admonishments, Daker has again moved

---

[1] On February 19, 2025, after giving him an opportunity to show cause, the Court restricted Daker's filings by directing the Clerk to open a miscellaneous case ("MC") in which to place anything filed by Daker. See doc. 1. His filings have since been placed in the MC, despite their association with other cases, and the Clerk was directed to forward the filing to the presiding judge, who determines whether the filing has any arguable merit. Id. at 3. The Court herein addresses his Motions despite its opinion that they are frivolous because they are, at least, novel.

under Federal Rules of Civil Procedure 59(e) and 60(b) for relief from "Judgment of Dismissal," of this Court's Orders and to Modify the District's January 26, 2023 injunction against him.  Presently, Daker seeks review of the dismissals in: Daker v. Adams, 6:22-cv-071, doc. 18 (S.D. Ga. July 13, 2023) (doc. 9); Daker v. Dozier, 6:22-cv-72, doc. 18 (S.D. Ga. May 2, 2023) (doc. 10); and Daker v. Ward, 6:22-cv-036, doc. 24 (S.D. Ga. Jan. 26, 2023) (doc. 11). The first two Orders for which Daker seeks review dismissed his case due to his violation of the Northern District's filing injunction against him.  The third case was dismissed when this Court entered its own injunction against Daker in which he did not timely comply.

Daker's present Motions all argue the same point: in light of Trump v. CASA, 606 U.S. 831 (2025), the filing injunctions instituted against him by the Northern and Southern Districts, which require Daker to include a copy of the order and a list of every lawsuit he has ever filed with every new lawsuit he files in any other federal court, is an improper universal or nationwide injunction which this Court and/or the Northern District lacks jurisdiction to issue. See e.g., doc. 11 at 3.  Daker argues that (1) a universal injunction exceeds the Court's "case or controversy" jurisdiction under Article III of the Constitution; (2) though "[t]he Judiciary Act of 1789 endowed federal courts with jurisdiction over 'all suits . . . in equity,' and still

4

today, this 'statute is what authorizes the federal courts to issue equitable remedies,' . . . there is no statute that gives this Court jurisdiction to decide what [Daker] must file in any other federal courts;" (3) a district court's inherent power to manage its own docket does not translate into the power to manage the docket of each and every other federal court; and (4) federal courts do not have jurisdiction to issue advisory opinions over cases that have not yet been filed, so the courts' direction that Daker must attach anything to future complaints in any court, which was, according to Daker, motivated by the "district court's desire to advise other courts that Mr. Daker is litigious or abusive," was improper. See id. at 3-6.

To put it succinctly, Daker's abusive litigation, and the Courts' efforts to stem his vexatiousness, are not analogous to the facts in Trump v. CASA in any way, whatsoever. 606 U.S. 831. In CASA, the Supreme Court held that "universal injunctions" -- that is, injunctions that "prohibit enforcement of a law or policy against anyone" -- "likely exceed the equitable authority that Congress has granted to federal courts." Id. at 837. (footnote omitted); see also, id. at 848 (noting that "universal injunctions" . . . "reach anyone affected by legislative or executive action—no matter how large the group or tangential the effect . . .") Here, the courts have not issued a universal injunction. See id. at n. 1 (clarifying that the type of injunction referenced by the

holding was properly termed "universal" injunction as opposed to "nationwide injunctions").

Instead, the courts directed Daker to comply with certain instructions when filing a case in other districts. Indeed, CASA itself acknowledges that traditional, parties-only injunctions are still properly applied beyond the jurisdiction of the issuing court. See id. at 837 n. 1 (citing Steele v. Bulova Watch Co., 344 U.S. 280, 289 (1952)). The Supreme Court specifically noted that the "difference between a traditional injunction," which remains proper, and "a universal injunction," which is no longer appropriate, "is not so much where it applies, but whom it protects: A universal injunction prohibits the Government from enforcing the law against anyone, anywhere. Id. (citing H. Wasserman, "Nationwide" Injunctions Are Really "Universal" Injunctions and They Are Never Appropriate, 22 Lewis & Clark L. Rev. 335, 338 (2018)). CASA therefore limits the availability of "universal injunctions," not "filing injunctions" which are clearly within the Courts' discretion. See CASA, 6063 U.S. at 839 ("The issue before us is one of remedy: whether, under the Judiciary Act of 1789, federal courts have equitable authority to issue universal injunctions."). The filing injunctions do not seek to prohibit enforcement of law or policy against the general populus.

Furthermore, as in any other case, the districts interpreting this Court's order have the discretion to consider its precedential value, and therefore the injunction is not in tension with "our system of divided judicial authority," something explicitly contemplated in CASA. Id. at 858 n. 17 (noting "the reality that district court opinions lack precedential force even vis-à-vis other judges in the same judicial district")(citing Camreta v. Greene, 563 U.S. 692, 708 n. 7 (2011) ("A decision of a federal district court judge is not binding precedent in either a different judicial district, the same judicial district, or even upon the same judge in a different case.")). The courts who drafted the injunction may not bind another court to enforcement of the directive, but their directive to Daker is well within their own "jurisdiction" because it applies only to the party in the case, and it does not attempt to enforce or prohibit enforcement of that directive against everyone, like a universal injunction would. Thus, the filing injunction against Daker remains proper because, though it requires compliance nationwide: (1) subject to another Court's enforcement, it applies only to the party bringing a case in the filing, i.e., Daker; (2) it does not prohibit the government from enforcing anything; and (3) it does not present "a question of legal interpretation for the entire realm." Id. at 848. In other words, it is not a universal injunction.

As to Daker's second argument that the Court has no statutory authority to enjoin him, he is misguided. In CASA, the Supreme Court held that because universal injunctions are a relatively modern phenomenon, they fall outside the bounds of a federal court's equitable authority under the Judiciary Act. Id. at 847. Contrarily, the Judiciary Act itself initially granted explicit authority to the Courts to issue writs (such as injunctions) by way of the All Writs Act. See Pennsylvania Bureau of Corr. v. U.S. Marshals Serv., 474 U.S. 34, 40 (1985) ("The All Writs Act originally was codified in § 14 of the Judiciary Act of 1789, 1 Stat. 81-82.") The All Writs Act has since been extracted from the Judiciary Act, and distinctly provides: "The Supreme Court and all courts established by Act of Congress may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law." 28 U.S.C. § 1651(a). The All Writs Act is a residual source of authority to issue writs that are not otherwise covered by statute. Pennsylvania Bureau of Corr., 474 U.S. at 43. A court's power to protect its jurisdiction under this Act includes:

> the power to enjoin a dissatisfied party bent on re-litigating claims that were (or could have been) previously litigated before the court from filing in both judicial and non-judicial forums, as long as the

injection does not completely foreclose a litigant from
any access to the courts.

Dinardo v. Palm Beach Cnty. Cir. Ct. Judge, 199 F. App'x 731, 736
(11th Cir. 2006) (quoting Riccard v. Prudential Ins. Co., 307 F.3d
1277, 1295 n. 15 (11th Cir. 2002) (citing Procup v. Strickland,
792 F.2d 1069, 1079 (11th Cir. 1986) (en banc ), and Klay v. United
Healthgroup, Inc., 376 F.3d 1092, 1099-1102 (11th Cir. 2004)
(discussing in detail the All Writs Act)).

Undeniably, Eleventh Circuit precedents establish a district
court's authority under the All Writs Act to enter a filing
injunction against a vexatious litigant, and indeed, the Eleventh
Circuit has approved the use of a filing injunction against Daker
himself in Daker v. Governor of Georgia, 2022 WL 1102015.  See
Miller v. Donald, 541 F.3d 1091, 1096 (11th Cir. 2008) ("To counter
such threat and to protect its jurisdiction, the district courts
are authorized by the All Writs Act, 28 U.S.C. § 1651(a), to
restrict access to vexatious and abusive litigants.");Cofield v.
Alabama Public Service Com'n, 936 F.2d 512, 518 (11th Cir. 1991)
(federal courts "may limit the filing of frivolous law suits on a
case by case basis"); see also Martin-Trigona v. Shaw, 986 F.2d
1384, 1387-88 (11th Cir. 1993) (listing cases where this Court has
upheld pre-filing restrictions on litigious plaintiffs).  Thus,
while universal injunctions lack "historical pedigree," CASA, 606
U.S. 846-847, filing injunctions do not, and, moreover, they are

specifically sanctioned under the All Writs Act for litigants like Daker.

Daker's third argument—that the district courts' inherent power may not allow them to manage other's dockets—misunderstands or misrepresents the nature of the injunction, so it is irrelevant. The injunction does not seek to manage other courts' dockets. The injunction merely instructs Daker, a party, to do things. Any court where he files future cases has the discretion to enforce compliance with the injunction as it sees fit, as this Court did in interpreting the Northern District's injunction—something it was well within its own jurisdiction to do. As to his fourth argument, the Court does not concede Daker's assumption that the direction to report litigation history is only motivated by a desire to "advise" other courts of Daker's past litigation. See, e.g., doc. 9, p. 7. In any event, the injunctions are not advisory opinions simply because the direction to Daker is motivated by a desire to "advise" other courts of his vexatiousness. While federal courts are not permitted to rule upon questions that are hypothetical or which do not affect the rights of the parties in the case before the court, Lewis v. Continental Bank Corp., 494 U.S. 472, 477 (1990), the directive issued in this Court's injunction does not rule on or impact any question he wishes to bring before any other court. It merely instructs him to list his litigation history and attach a copy of the order. Moreover, Daker

10

obviously was a party to the case he filed in this Court which resulted in the injunction. He was obviously a party to the case that this Court dismissed based on his failure to comply with the Northern District's injunction. He will be a party to any other case he files. The injunction does not raise hypothetical questions or those which do not impact Daker's rights. Thus, like his third argument, his argument regarding "advisory opinions" is irrelevant because the injunction is not an advisory opinion.

Finally, as to the two cases the Court dismissed which enforced the Northern District's injunction, this Court dismissed those cases because Daker had filed a suit not only in contravention of the Northern District's injunction against him, but also in contravention of the Eleventh Circuit's mandate affirming the Northern District's injunction which had issued five months before Plaintiff filed that case. See Daker v. Dozier, 6:22-cv-072, doc. 8 at 2 (S.D. Ga. December 20, 2022). The Eleventh Circuit's opinion affirming the injunction specifically addressed the jurisdiction argument, Daker, 2022 WL 1102015, at *2, and it is still binding authority upon this Court, especially considering the distinguishable points of law and facts contained within CASA. See McGinley v. Houston, 361 F.3d 1328, 1331 (11th Cir. 2004) ("The general rule is that a district judge's decision neither binds another district judge nor binds him, although a judge ought to give great weight to his own prior decisions. [Cit.]

11

A circuit court's decision binds the district courts sitting within its jurisdiction while a decision by the Supreme Court binds all circuit and district courts.")  Even if Daker's arguments were well taken, without Eleventh Circuit authority precluding the use of filing injunctions against frivolous or abusive filers, this Court will not enter an order incongruous with the Eleventh Circuit's mandate.  Accordingly, Daker's Motions for Relief from Judgment, docs. 9 & 10, and his Motion to Modify Injunction, doc. 11, are **DENIED**.

**ORDER ENTERED** at Augusta, Georgia, this 22nd day of September, 2025.

HONORABLE J. RANDAL HALL
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF GEORGIA